No. 82-461

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

GALLATIN COUNTY,

        Plaintiff and Appellant,

  -vs-

D & R MUSIC & VENDING, INC.,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        A. Michael Salvagni, County Attorney, Bozeman, Montana
        Marc Racicot, Helena, Montana
        Pablo Perhacs, Special Dep. Gallatin County Atty.,
        Billings, Montana (Argued)
        Robert Deschamps, co-special Dep. County Atty for
        Gallatin County, Missoula, Montana (Argued)

    For Respondent:

        Harrison, Loendorf & Poston; John P. Poston (Argued),
        Helena, Montana
        Wellcome & Frost; Page Wellcome, Bozeman, Montana

    For Amicus Curiae:

        Loble & Pauly; Lester Loble, For United Methodist
        Church, Helena, Montana

---

        Submitted:  October 28, 1983

        Decided:  February 3, 1984

Filed: FEB 1984

*Ethel M. Harrison*

---
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The question in this case is whether an electronic poker machine called Draw-80 Poker is legal in Montana. The District Court held it was. We reverse.

This matter arose with the Gallatin County attorney requesting a declaratory judgment that electronic poker machines be declared slot machines and therefore illegal. Contemporaneously, a mandamus action was pending in the same court requesting Gallatin County be required to license keno machines. The mandamus action was brought by respondent D & R Music and Vending, Inc. (hereinafter "D & R"). D & R then moved and was allowed to enter the declaratory judgment suit as a defendant. The declaratory judgment suit was then consolidated with the pending mandamus action under Rule 20(a), M.R.Civ.P. The matter was then bifurcated into two causes, one of which, involving the legality of keno machines, has been decided by this Court in Gallatin County v. D & R Music & Vending (Mont. 1982), 654 P.2d 998, 39 St.Rep. 2197. The second part of the matter is this case which involves the legality of electronic poker machines. On September 24, 1982, the Gallatin County District Court entered judgment holding electronic poker machines legal and authorized by the Montana Card Games Act. We reverse.

Three issues are presented by the parties for our review:

1. Whether the game played on the electronic poker machines is the game of poker as described and authorized by the Montana Card Games Act.

2. Whether the electronic poker machines are slot machines as defined in section 23-5-101, MCA.

2

3. Whether the Montana Card Games Act authorizes the playing of poker in which the house competes against a single player.

I

The first issue is whether the game played on electronic poker machines is the game of poker as described and authorized by the Montana Card Games Act. The machines at issue consist of a computer, a video screen, accompanying electronics, and a receptacle for holding coins. Fifty-two characters can be displayed on the screen simulating a deck of cards. The characters appear on the screen through a random generating pattern.

The machines are activated by placing a quarter or numerous quarters in the coin slot and the player receives one credit for each quarter deposited. After deciding the number of credits to bet, the player presses a button which causes the images of five playing cards to appear on the screen. The machine then determines whether the images appearing on the screen represent a winning combination. The player then has the option to change the images by pressing other buttons to erase certain images and to cause new randomly-selected images to appear. Again, the machine determines which groups of images represent winning combinations. Winning credits are displayed on the screen and payoffs are made in cash by the player redeeming his credits from the proprietor.

The machine is programmed to retain a certain percentage of all money deposited. This retention percentage is primarily determined by the number of winning combinations

3

programmed into the machine. The retention percentage in Montana is between 22 and 25 percent.

The Montana Card Games Act of 1974 provides:

> "(2) The card games authorized by this part are and are limited to the card games known as bridge, cribbage, hearts, panguingue, pinochle, pitch, rummy, whist, solo, and poker." Section 23-5-311(2), MCA.

While the term "poker" is not precisely defined by statute, the word "is of ancient and common understanding." Palmer v. State (Mont. 1981), 625 P.2d 550, 552, 38 St.Rep. 447, 450. It is a game played by individuals with one player pitting his skills and talents against those of the other players. No variation of poker involves only one player. It is a game played with playing cards, not with electronic images displayed on a screen. Poker is a game of skill and chance. It is not a game programmed so that no one wins a certain percentage of the time.

After reviewing the file, the evidence and the documentation provided by acknowledged experts in the field, we conclude that the electronic game played on these machines is not poker. Accordingly, it is not authorized by the Montana Card Games Act and is consequently illegal thereunder.


II

The second issue is whether the electronic poker machines are slot machines under section 23-5-101, MCA.

The statute defines a slot machine as ". . . a machine operated by inserting a coin, token, chip, trade check, or paper currency therein by the player and from the play of which he obtains or may obtain money, checks, chips, tokens, or paper currency redeemable in money . . ." Section

4

23-5-101(1), MCA. We find no discrepancy between this statutory definition and the operation of the gambling machines. The player activates the machine by inserting a single quarter or numerous quarters. If he wins, he is awarded credits which are redeemable by the proprietor in cash. The statutory definition is clear and unambiguous. The operating procedures of the machine are also clear and unsophisticated, and we find it impossible to distinguish between a slot machine as defined by statute and an electronic "poker" machine.

When the language of the statute is clear and unambiguous, no parol evidence is permissible. Under the same circumstances, no other rules of statutory construction come into play. The statutory language here is perfectly clear and therefore need only be applied--not interpreted. Under the language of section 23-5-101, MCA, the electronic "poker" machine is clearly a slot machine and as such expressly barred by the legislature from operation within this state.


III

The third issue is whether the Montana Card Games Act authorizes the playing of poker in which the house competes against a single player.

". . . The Act expresses the legislative intention that only certain card games by which participants vie against one another, _inter se_, shall be authorized and that card games where each player vies against the house are prohibited. The obvious legislative purpose is to ban casino-type gambling." _Palmer_, 625 P.2d at 551-552, 38 St.Rep. at 449.

In the case at bar, the machine represents the house. In addition, considering the programmed retainage, the house and the player do not vie equally against each other. The

5

player must lose a certain percent of the time. The legislature clearly intended to bar games in which a player vies against the house. It must be held that the legislature would even more vehemently prohibit a game where the house and the player do not have an even chance at success. We therefore hold that these games where one player vies against the house are barred by the legislature and therefore illegal.

## IV

In summary we hold:

(1) The electronic gambling machine known as Draw-80 Poker does not qualify as a game of poker and is therefore not authorized under the Montana Card Games Act;

(2) The electronic poker machines are slot machines as defined by section 23-5-101, MCA; and,

(3) The Montana Card Games Act does not authorize the playing of "poker" wherein a single player competes against the house.

We reverse. Judgment is entered in accordance with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr. respectfully dissents as follows.

I respectfully dissent from the majority opinion.

The majority first addresses the issue of whether the game played on a poker machine is "poker" as that term is generally known. We all agree that the Montana Card Games Act of 1972 does not define poker but permits the playing of poker.

The majority seems to rely upon two factors in determining that poker machines do not represent the game of poker contemplated by the statute. First of all, the majority notes that the machine does not utilize playing cards but rather electronic images. This distinction is made without reference to this Court's decision in Treasure State Games, Inc. vs. State (1976), 170 Mont. 189. In that case we held Keno machines to be a legal form of bingo. A fair reading of that decision would indicate approval of machines which electronically simulate otherwise lawful games. Therefore, if, in playing a poker machine, one is playing a game that would otherwise be poker, if played against another person or against the house, then the game should be legal.

Secondly, the majority deems the game not to be poker when played upon a machine for the reason that skill is not required. No legal authority is cited for this assertion. In fact, there is evidence in the record that "showdown" poker is recognized. Obviously "showdown" does not require skill.

There is testimony in this record to show that the game played on the poker machine is, in fact, a game involving skill. The evidence offered by the defendant shows that the chances of winning with skillful play are 3 to 1 better than the chances of random play.

7

The majority opinion conveniently avoids referring to the trial court's findings of fact. Finding number 3(h) provides:

> "Whether the player wins or loses depends not only on the "luck of the draw" as determined by the odds previously discussed herein, but also on the knowledge of those odds by the player, and his skill in applying those odds to the particular hand with which he is confronted;"

This finding binds our Court, unless clearly erroneous. The majority fails to address the finding and fails to support its bald conclusion that the game is different from poker in that it does not involve skill.

The trial court further found in Finding 3(i) that:

> "Save and except for the electronic aspects of the game herein before described, the game of poker as played on this machine is essentially the game of poker as that term is anciently and commonly understood (Palmer v. State, 38 St.Rptr. 447, 450 (March, 1982)); . . .."

Again the majority fails to address the finding. If the finding is supported by the record, and it clearly is, then poker machines are lawful under the authority of Treasure State Games vs. State, supra.

I will not address the issue of whether poker machines are slot machines. Clearly if they are lawful under the Montana Card Games Act, then they are not unlawful slot machines. Since I would find they are lawful under the Montana Card Games Act, the issue of slot machines is clearly resolved in favor of the defendant.

The majority gratuitously determines that poker cannot be played against the house. The majority need not have reached this issue since they found that, in any event, the game being played in a poker machine was not poker at all. However, since the majority has seen fit to give an advisory opinion on this issue, I feel compelled to answer.

There is absolutely nothing in the Montana Card Game Act which prohibits playing against the house. The majority apparently reasons that since the machine keeps twenty percent a player must lose a certain percent of the time. The Legislature clearly intended to bar games where such a result follows. However, it seems to me that the money kept by the machine is simply a "rake-off" which is specifically authorized by section 23-5-313.

I can only conclude that the majority opinion fails to analyze the trial court's findings, the evidence which supports those findings, and the applicable statutes for the reason that the majority opinion would thereby fail. What we have here is judicial legislation which seems to have done the following:

1. Banned all card games that do not require skill. This would include "showdown" or "fun poker".

2. Banned all card games played against the house.

3. Prohibited the house from taking a percentage of the pot as a "rakeoff" although such is specifically provided for by statute.

By holding that poker machines are actually illegal slot machines, the court allows for confiscation of the machines. This seems to be a particularly harsh result in light of the fact that poker machines were purchased at a cost of several thousand dollars each based upon this Court's opinion in Treasure State Games, Inc. vs. State, _supra_, and the Attorney General's opinion which followed. On August 15, 1979 Mike Greely, Attorney General of Montana, issued an opinion which stated:

> "You recently requested my opinion on the legality of an electronic gambling device that simulates the game of poker. Enclosed are copies of two letters to the Lewis and Clark County Attorney which set out my views on these machines. While I agree that

9

these machines are very close to being slot
machines and that their proliferation may not be in
the public interest, we are bound by the Supreme
Court's controlling decision in the Treasure State
Games case, which is discussed in the letters.
Until either the Legislature or the Court sees fit
to change the law, electronic poker machines appear
to be legal."

If the Court wishes to overrule the Treasure State Games case, then it should do so specifically. Of course the majority never mentions the case. If the Court wishes to change the law by judicial fiat then the Court should only do so prospectively. Poker machines were purchased in good faith reliance upon the Attorney General's opinion and upon previous decisions of this Court. To declare these machines now to be slot machines and allow their confiscation seems to me to be taking property without due process of law.

I would hope the County Attorneys would at least permit owners of poker machines to have some time in which to dispose of them since they were legal at the time they were purchased.

Justice

Mr. Justice John C. Sheehy, dissenting:


Draw-80 Poker machines, say the majority, are full of evil
        designs
As if they had never thrilled to four aces, or even kings
        full of nines.
The county attorneys oppose the machines although twenty-six
        of them have licensed such machines coyly.
Now they contend Draw-80 isn't poker because it isn't listed
        in Hoyle.
Well, I have looked at Hoyle, and to tell you no lies
There are as many kinds of poker as it has entered into the
        heart of man to devise.
Hoyle lists Stud Poker, Draw Poker, Hold-Em, Low Ball,
        Cincinnati and a lot more, but my, oh my oh,
Among those not listed in Hoyle, to name a few, are Kings
        Wild Low Ball With Two Jerks, Duffner, Deuces Are Wild
        in The Presence of Clubs, Sullivan, Payday At Kelly Shaft,
        O'Donnell and Steubensville, Ohio.
Lest your senses go batty,
The game of Steubensville is so-called because it is close
        to Cincinnati.

One thing above all the majority should have kept in mind:
Poker is any game where two pairs beat a pair, three of a
        kind beat two pairs, a straight beats three of a kind,
        a flush beats a straight, a full house beats a flush,
        four of a kind beat a full house, and a straight flush
        beats four of a kind.
Any game that has winning hands in that progression is poker
With or without a joker
And no judicial opinion, no matter how weighty,
Can make anything but poker out of Draw-80.
Draw-80 may seem sinister
To one's minister,
But putting fences around what poker means is as preposterous
As arguing how many angels can stand on the point of a
        rhinoceros.

But oh, say the majority, it takes two to play poker, just
        like it takes two to tango,
Forgetting that when poker players want to play poker, they
        are not interested in the fandango.
Draw-80 Poker can be described in terms the simplest:
It is one-draw poker with five possible discards and no joker,
        and the house has two kings to beat, as any poker player
        could tell you from senior citizens to the pimplest.

The majority read into the statute that poker is not poker
        unless one is taking cards from a human dealer
Which would be all right if the dealer ain't a peeler.
Many a poker player on an ego trip
Has dropped a bundle to a dealer with a mechanic's grip.
It makes a real poker player panic
To see a pack of bicycles in the grip of a mechanic.
But this Court has been so busy expanding the law of torts
        and interpreting wills
It forgot about shills.
So now, instead of a tamper-proof device to play with,
Montanans must seek out human dealers to gamble their pay with.

Finally, if there is anything that a Draw-Poker machine
     can be thought to mean
It is not a slot machine.
A chimp can be taught to play mindlessly on a one-armed bandit
But most humans wont learn not to discard aces or not to draw
     to an inside straight, if we are the least bit candit.

The Draw-80 machine owners should not have lost this case
     but they did.
They came to this Court with this case holding
     aces and eights, and you know what that hand did to Billy
     The Kid.
In the shortest of synopses
They lost to the blue probosces,
Now while the Order of the Blue Nose relaxes,
Cities and counties can go about replacing lost revenues by
     raising other taxes.
Poker players of Montana, unite!
Come out of the closet, or at least turn on the closet light.

_____
                    John L. Sheehy
                         Justice

Mr. Justice Daniel J. Shea separately concurring and dissenting:

I join the majority in its holding that electronic poker machines are not authorized by the Montana Card Games Act and that the house cannot compete against a single player. I am convinced that the system of "programmed retainage" built into the machines to assure the profits of the house, does not fall within any authorized games of poker. It is not simply a situation where the house takes a rake from each game, but rather, a situation in which a player must lose a certain percentage of the time to assure the house its profits. That is not poker.

I do not, however, agree with the majority holding that the machines are actually slot machines, and therefore illegal per se. A sufficient factual basis does not exist in the record to make that determination.

I further share in the concerns of Justice Morrison in his dissent that the games should not be confiscated and that the owners should be given a reasonable time within which to dispose of them. The owners should not be penalized because of the inconsistent policy of the county attorneys in enforcing the gambling laws.

_____
Justice

- 13 -